Cynthia Anderson Barker and I represent Latrice Dixon, who is the plaintiff and the appellant. The tragic events of 9-11 do not abrogate the Fourth Amendment. What that means is that a woman on the beach at night and alone, even though large, is not fair game for a frisk. And she still keeps her Fourth Amendment right against unreasonable searches, even if she is black and declines consent to be searched. So in this instance, a pat-down search by a male police officer, taking his hands and placing them along the contours of her body to feel for weapons, subjected her, a middle-class African-American woman, taking a break at the beach after a long day at work and a long commute home, to a feeling of great intrusion on her person. Just because you don't have a lot of time, I think we kind of need to jump to the chase because you did have a jury trial on this, and so we're dealing with a jury trial and a 50-B motion, a 50-B motion. Let me ask you this. I'm a little bit confused procedurally just from the standpoint about the qualified immunity issue. You brought a motion for summary judgment, right, before, and that was denied and you went to trial. Correct. Did the defendants bring them, did they go for qualified immunity before the trial or how did, somehow in the proceedings, the judge deferred this until after the trial, and it's kind of odd that there's really not a whole point, and qualified immunity is to avoid going to trial. So I'm a little confused. No, the defendants did not bring that motion. Okay. All right. Okay. So then it comes up in the context of the motion for the new trial, I guess, right? Correct. But really the issue for us is we're requesting a new trial because the judge did not give a jury instruction which essentially said a refusal to consent to a search does not allow you to search, and there's a court case, Grave v. City of Coeur d'Alene, right on that point. Well, some of the problems that I have with some of your jury instructions is you pull one thing out, and that obviously probable cause is the totality of the circumstances. So the question is if, you know, and I was a trial judge, and sometimes, you know, and lawyers always want to instruct on their one point and highlight that particular one point. The issue is were the instructions given correct? Because it isn't necessarily a correct statement of the law that under these circumstances that failure to give consent means there was no probable cause, because that wasn't all that there was here. Correct. The other big point, and as trial counsel mentioned throughout the trial 12 times, was the post-9-11 environment, and that was used as one of the factors in the totality of the circumstances to justify the search. Well, but aren't there a number of factors that were mentioned? I mean, we've got attitude and demeanor. Correct. We've got remote location. Correct. Time. This post-9-11. Hands in the pocket. The fact that she was large. And the size. Correct. Even if you toss a couple of those, which I think would be appropriate, then the question to me becomes one of, you know, do the remainder of those give the officer's probable cause? And you seem to be struggling against the fact that we would be required to hold that there is only one conclusion that can be reached, and that's in your client's favor, to grant a 50-B motion. All right. Your Honor, if we took out the 9-11 factor and the refusal to consent to be searched and just looked at those other factors, okay, one of which being large, what you've mentioned, in and of itself, each one of those wouldn't allow reasonable suspicion to search. Or even together, there's no case law supporting those factors allowing for a search alone, large, at night, on a beach. There's no bulge. There's no broken. Well, tell me, is there a law that says if one of the factors is failure to consent to search, even though there's a whole lot of other things, that that is the deal breaker right there? No. And that's what I want to know, if there's anything to that effect. Okay. Graves de Cordelein simply lists that as one reason, in that case, that they could not search the person. But the other issue in that case was the young man was arguing with the police officer, too. And they still found that there was no reasonable suspicion to search him. So I just think the remaining factors, even if you take out the two that we requested jury instructions on, would not even rise to that level. But the jury needed to hear those instructions because we believe the 9-11 argument was very inflammatory. It was very prejudicial to us. And it's not a factor. There has to be a particularized, objective reason to search. And in this case, Ms. Dixon is up on the lifeguard tower. They ask her to come down. She comes down within a minute or two. That's what the record shows. She's down on the ground. She cooperates. She walks over. The lights are on her, two different lights from the police officers, and then the headlights. And then when they start writing her a ticket, she begins to get agitated. And she says, why are you writing me a ticket? I pay taxes, too. May I have your name and badge number? The ticket writing stops, and they search her. And so we believe, again, you know, she's talking to them. She has that First Amendment right. But their concern and what they raised was her demeanor. They felt threatened. They were afraid. We don't believe that, because she was a woman alone on the beach, gazing at the moon. You don't believe that, and you argued that. Yeah. And the jury heard everything, and the jury went for the defendant. So how do we get... That's your rock that you're pushing uphill. I believe what the jury heard over and over, two weeks after 9-11, was the 9-11 argument. And what was argued was, we're in a heightened state of alert. We're at a port. She's sitting on a lifeguard tower. Somehow, that heightened the concern of the officers, that she could perhaps be an Al-Qaeda operative. I don't know. African-American woman. I don't think so. But that was really played upon at the trial a lot, 12 times mentioned during the course of the trial. And again, her questioning of authority, the refusal of consent to be searched. We think that played into the jury's concern. We'd like to take those elements out, and get a retrial, and see what happens. Because those instructions were very prejudicial, and those aren't the elements of reasonable suspicion. All right. Thank you. Do you want to reserve for rebuttal, then? Thank you. Thank you. Good morning, Your Honors. My name is Monty Matchett. I represent the city of Long Beach, and the two individual defendants in this case. Good morning. Good morning. There are some interesting contradiction, and ironies, and plaintiffs' entire approach to this case. On one hand, they talk about Ms. Dixon being a well-dressed woman. And since she's well-dressed, why would the police possibly have some suspicion to search her? Ironically, if the police had searched her because she was not well-dressed, and that was one of the factors considered, that would clearly be inappropriate. The plaintiffs and appellants also raised the question, well, she was a woman. So consequently, there was absolutely no reason to be concerned or fearful of her. And yet, they also attacked the appellees in this case for that very argument. Well, there are other things there, but do you contend that a person's refusal to consent to a search may be used as a factor to determine whether a search is reasonable? No. But that's not the facts of the case. In this case, and this was, again, this is following a Rule 50 motion, so this Court has to consider the facts in a light most favorable to the non-moving party. That fact wasn't developed. It was argued extensively in the briefs, but it wasn't in the record. In fact, the actual fact was the officer involved requested a search because he had concerns about his safety and the safety of his partner. He had already made his decision to search her. She then said, no, I don't want you to search me. He said, ma'am, we're going to search you for our personal safety. So this question about whether or not that's a factor, her refusal to agree to be searched, is just not in the record, although it was argued on the appellate briefs. Well, let me, what is the, obviously, qualified immunity after you have a defense verdict is sort of meaningless, but the point is, I guess, if we did not affirm the verdict, then the Court needs to make a determination of qualified immunity, or what, this comes at an, if there's an odd posture to this particular case, because we usually see qualified immunity, you know, before the trial. Justice Callahan, you're absolutely correct. It comes at a very unusual stage, and I think it, I frankly am somewhat having some difficulty dealing with it myself. I inherited the case late in the game. It was not brought by summary judgment. That would have been the appropriate time to bring a motion based on qualified immunity. It was not. However, at the time of trial, the defendants preserved their right to argue qualified immunity by way of a Rule 50 motion. The judge did something unusual in this case, though. The district court judge said, we will hear Rule 50A motions after the trial, after the jury reaches a verdict. Once the court, or once, excuse me, once the jury reached a verdict in favor of the defendant, it was moved. There was no point for me to raise a qualified immunity argument, at least to the district court, but I do believe it's appropriate to raise it at this point, and I, and I surmise that the court would have to consider the factors and decide whether or not these officers, or whether reasonable officer under similar circumstances, would believe what they were doing was a violation of the Constitution, and I submit to you that they would not. Well, if you affirm the jury verdict, do you have to get to that issue? No. Counsel, if you accept that the standard is that we look at the combination of factors that were known to the police officers, what do I do with the fact that certain of their reasons, Ms. Dixon's size, for example, would seem to be inappropriate, and do I dismiss those and then proceed for the ones that are appropriate for a reasonable police officer, or does it taint the entire process? Does not taint the entire process, Your Honor. The court's approach should be to look at each factor that a reasonable police officer would consider and give it the weight that it requires, because it has to consider the totality of the circumstances. In some cases, this court may feel that no reasonable inference can be drawn from a certain set of facts that Ms. Dixon was potentially armed, may have had a weapon, and may have been dangerous, and disregard that. But the court, unlike the appellant's view, which is to look at each isolated incident and ridicule it, and then move on to the next set of facts and look at the next. I love that. Since appellant didn't get her instruction on, say, that, you know, failure to give, you just told me that refusal to give consent isn't a factor to determine whether a search was reasonable. She didn't get that instruction. So how do we know, since we don't, you know, there wasn't a question to the jury or whatever, how do we know that the whole jury verdict isn't based on that? Well, the jury was, there was extensive argument, both by the plaintiff and by the defendant. But we tell jurors, don't listen to lawyers, they don't, you know, whatever they say isn't evidence. The evidence is what you hear from the witness stand, and the law is what I tell you the law to be. Correct. And the jury heard the evidence concerning whether or not her refusal to be searched was actually one of the motivating factors of the police officers. We argued that it was a decision, but the instruction was broad enough to cover that factual dispute. The instruction, and I apologize, Your Honors, I don't recall the exact instruction. This trial took place almost two years ago, and I just don't recall the exact instruction. But it was a general instruction that said, talked about whether the search was reasonable in light of the totality of the circumstances. We don't have further questions unless you want to make further comments. I just wanted to make two other points very quickly, Your Honor. I just, I may have said this, and I apologize if I'm repeating myself, but again, I think as Your Honor has already correctly identified the plaintiff, the appellate's burden in this case, we prevailed at trial, so now they must show that there is no evidence from which a reasonable trier of fact could conclude that these officers felt that Ms. Dixon was potentially armed and dangerous. And I think the weight of authority supports the verdict of the trial court. Well, for defendants to prevail in this type of lawsuit, the jurors have to find that the officers had, their actions were reasonable, right? Correct. That's, I mean, what are the elements that, that's one of the elements, right? That they had a reasonable suspicion that the suspect that they were dealing with may be armed and potentially dangerous. And that's based on an objective standard. And all that information, by way of jury instruction, was provided to the jury. And that's the conclusion they reached. The question now is, is there substantial evidence to support that jury verdict? Considering the evidence and the inferences drawn from that evidence in a light most favorable to the non-moving party, and I point out to this group, your justices, that the briefs do not do that. That they're continually arguing the facts. We're only judges. There is no justice on the Ninth Circuit. Okay. I think you're right. But you're good judges. Yeah. That's my, I conclude, Your Honor. I'll submit on that. All right. Thank you. Just briefly, in the record at the trial, the city said the following. That they can draw an inference that a person is armed from a person's refusal to consent to being searched. And that's in the record. And then also, a person asking for a name and badge number could be considered one of the facts and circumstances that contribute to a reasonable belief that the person is armed. We believe that there should have been a directed verdict in our favor at the trial. And that these erroneous jury instructions require that the judgment be set aside and we get a new trial so that we are able to have these limiting jury instructions. When you say erroneous jury instruction, isn't it that the instruction was not given? It was not given. We submitted it. I'm sorry. And it was not given. All right. And if there is a defect in the instruction, not in accordance with law, then the court's justified in not giving it. Isn't that the rule? Yes. That's correct. But, in this case, there was an absence of jury instructions on these two very important points that were hammered out at the trial. So, thank you very much. Thank you. This matter will stand submitted. Thank you both for your argument. The next matter on calendar is Juan Carlos Rodriguez-Hernandez versus a defendant named Alberto Gonzalez, case number 0475343.
judges: Hall, Callahan, Robart